Good morning, Your Honor. May it please the court. My name is Juan Hong. I am a relator of this case, and also I am an attorney for this case for plaintiff and appellant because I am a licensed lawyer. And before I became a lawyer, I was a lawyer for 20 years. Prior to that, I was a professor at different universities. Here, Newport Sensors, defendant Newport Sensors, and Professor Maria Feng, professors at the University of California, Irvine School of Engineering. So my lawsuit is not as an opportunistic plaintiff. I sue this lawsuit as an insider. So what was the inside information that you brought to the authority's attention that was not available publicly? The information available publicly is that Professor Maria Feng is a professor at the University of California. She is the founder of the Newport Sensors, and she was the principal investigator of the various SBIR research grant, which she obtained about $7 million from 2003-2013. My role is the following. As a professor, especially professors in School of Engineering or School of Medicine or School of Science are eager to have their own venture business, capital business. So when professor is on the absence of leave or on their sabbatical leave, they are entitled to become a principal investigator for SBIR grant. But if a professor is 100%, in other words, not on leave of absence or not on sabbatical leave, they cannot work outside. If they work as an outside consultant once a day, once a week, then they have to report that activity to the university. So what I wanted to focus on is what did you bring? I mean, for example, someone can be what I call an Internet sleuth, where they can look at the Internet and find little things and they can patch together a story. That normally is not what we think of as whistleblower. That's someone on the outside looking at the Internet to piece together some facts. What did you bring or at least what does the Second Amendment complaint allege that you brought to the authority's attention that was not available on the Internet or through FOIA? What was the insider knowledge that you had? During 2003, 2013, when she obtained the seven SBIR grant, she was not on sabbatical leave. She was not on a leave of absence. Well, in fact, your complaint doesn't say any of that. It says that she was a 100% professor, right? And it doesn't say how you know that. It doesn't say whether she was on leave or not on leave. If somebody's on leave, they're still a 100% professor, no? I think my opening brief has all those information. And also, how do I know? When I see the SBIR grant, I immediately realize the address of the Newport Center is the address of the residence.  Oh, because the principal investigator of the SBIR grant is a full-time professor at the University of California. I understand, but what does the address have to do with it? Oh, identification of the person. That Mr. Smith is the Mr. Smith of my neighbor in my school of engineering building. I have to figure out who's that same person and why not. That is one of the contributions. Let me try to ask the question that I think you've been asked already once by Judge Owens and already once by Judge Berzon. I understand the nature of your complaint as to why Professor Fang was doing something wrong. That is to say, in your view, she couldn't both be a principal investigator and a full-time professor. That's not the question. The question is, well, wasn't it public knowledge that she was a full-time professor? How is the information that you're bringing here that she was a full-time professor not already publicly available information? But even she's a full-time professor, if she was on leave of absence, many professors do that. Yes, but that's not my question. I understand that if you're on leave of absence, that's different, or if you're on sabbatical, that's different. But my question is, why is that not already public information, that she's on sabbatical or not on sabbatical? Those information are not available at the University of California Irvine website with this claim. Those information are not available at the University of California Irvine website. Are they 100% employed by the University of California? If somebody is on sabbatical at the University of California, are they a professor at the University of California? Are they 100% employed by the University of California? So what did you say in your complaint when you said that she had 100% employment at the University of California, that said anything about whether she was on leave or whether she was on sabbatical or for some other reason was legitimately doing this? You didn't say she was. You didn't address any of that. All you said was that she was 100% employed at the University of California. But if she'd been on leave or if she'd been on sabbatical, she still would have been 100% employed at the University of California, right? I agree with you, Your Honor. So I don't understand how the complaint... Yeah, I didn't write clearly as you wanted to see, but at the end of the complaint, there was no outside activity and no outside activity was reported to the University of California Irvine. I have another question about this. I don't know about at the engineering school, but at many medical schools, people's salaries are essentially paid by their grads, right? So I don't know what it means to say she was 100% employed by the University of California. They're employed by the university, but their salaries are being paid by someone else. So that's not clear either. You haven't really accounted for that possibility, that she has a position, but she isn't getting paid. We don't know. I agree. At the same time, I don't agree, Your Honor. School of engineering, nine months academic salary is paid by the state of California. Not either. I mean, in other words, what have you said in the complaint that is different from what one would know from looking at the website and knowing that she's a professor at the University of California? You say she's 100% employed, but that covers all kinds of things. It could mean her salary is being paid by somebody else. It could mean she's on leave. It could mean she's on sabbatical. So you haven't clarified anything. Yes, I admit that I didn't clarify that in my complaint. But the school of engineering professors, nine months academic salaries are paid by the state of California, but additional summer salary, three months of summer salary, can be collected from the research grant or company. But she's only going to work in the summer. I mean, it's just nothing that you've said in this complaint really adds to the general information that in some sense or other, she was employed by the University of California. That's all you've said. It's all we know from the websites. The documents defendants submitted had publicly disclosed alleged fraudulent transactions. I interpret that as a concession statement. In other words, I agree I made fraudulent transactions, but those are supported by the website information or other documents. So that was shocking to me, because in most of the lawsuits, plaintiffs accuse defendants with wrongdoing. Then defendants defend themselves by all kinds of evidence. Can I try one more time with the question? In order for you to succeed, you need to show that the information as to whether Ms. Fang, Professor Fang, was or was not on sabbatical, you need to show that that was secret information, correct? I didn't include that in the complaint. No, no, I'm asking a different question. I'm just asking the legal question. You must show that the information that Ms. Professor Fang was not working, was working full-time rather than on sabbatical, you need to show that that's secret information. Yes. I have to show, and I have, yes. Well, you see, I don't think you have shown. It is ordinarily, absolutely, easily available public information whether a professor is or is not on sabbatical. I mean, that's, all you need to do is make a telephone call to the university. The university will have somewhere available, and it's publicly available information, what professors are teaching, what professors are not teaching. I mean, I just don't see that you've shown that that's secret information in the sense that you need to show it. I listed the four cases from page 49 to page 50. 51 of opening brief. Those are four cases related to SBIR grant and conflict of interest. For example... But that's the question is whether or not there's wrongdoing. My question is whether or not the information is publicly available. But is that the standard, publicly available? What? Is the standard publicly available? What is the standard with regard to... It's more specific than that, right? Your Honor, standard... It has to be, it has to appear in a, in 2010 at least, at the relevant time. It had to be, has to be public disclosure in a criminal, civil or administrative hearing, in a congressional administrative or government accounting office report, audit or investigation, or from the news media. So... A statute of... The statute that's relevant here, which is what, that describes what a public disclosure is. Oh, oh. 31 U.S.C.A. 37304A. Yes. So it's a public disclosure statute. But it's only certain public disclosures. It's not anything somebody could find, like by making a phone call. There's no court shall have... This is a friendly question, just to clue you in. She's trying to defend you against the question I just asked. Here, all those publicly available information is not allegation of a fraud. It's not transactions in a criminal proceeding. It's not transactions in civil hearing. It is not an administrative hearing in congressional administrative or government. It is not an audit report. It is not an accounting office report. It is not an investigation. Those university website I had, any professor have their own website. And in the website, some professors brag that I am a founder of Chuan Hong Enterprise. Then if I get an SBIR grant through Chuan Hong Enterprise, that doesn't mean that I violate the SBIR certification requirement. There should be supporting evidence that I apply the SBIR grant, even not in leave of absence, not on my sabbatical leave. So those information I provided in the complaint as an insider. Okay. Now, you used up all your time. Let's hear from the other side, but we will give you a chance to respond. Yes, thank you. Good morning, Your Honors, and may it please the Court, my name is Aaron Silberman. I'm here representing both of the defendants and the appellees in this case. As the Court has focused in its questions to the appellant, this appeal is about the public disclosure bar, and that was the basis for the opinion of Judge Staten below, granting our motion to dismiss the second amended complaint, the third complaint that was filed by the relator. A couple comments, if I may, on some of the questions and answers that just occurred. One is that I don't believe from the appellant's responses that there was a recognition that the burden of proving subject matter jurisdiction was on the plaintiff, the relator, in the case below. So statements, for example, that the defendants should have put forward evidence that they, or that Ms. Fang, that Professor Fang was part-time or on leave of absence, that's not the correct burden. The burden was on the relator. The really most interesting question in this case, and the only one, is whether this is actually news media. Is that your contention, that, for example, I gather, let's leave aside the documents, the pages that report that she was a professor and so on. That's not very news media, but let's assume it is. What exactly were they? There are government websites, and what would you have to do? You have to scroll down. If you weren't looking for a particular grant, all you'd see is, I mean, there's just huge long lists of grants. Is that what it is? I believe those websites, the government websites for both the Department of Transportation, DOD, and NIST grants, qualify under two categories under the statute for public disclosure. I believe they are both government reports, and I believe they are news media. And as to your question about whether they're news media, there is ample authority that government websites are... Well, there isn't that ample. There's no authority in the Ninth Circuit. Is that correct? I believe that's correct. There's not ample authority. There's no authority for our purposes. I'd have to look. I believe there are Ninth Circuit, or rather, district courts within the circuit. There are, but I'd like some justification for it, because I must say that it's certainly not... The original idea, I presume, was that, you know, if anybody can just find this by reading the morning paper or going to some obvious place. But the Internet has sort of changed all that, because, I mean, there is all kinds of stuff buried on the Internet, but the notion that the government is going to be able to find it without somebody digging it out doesn't really comport with what the point of all this was. Two thoughts in response to that. One is, I think it's worth going back to the intent and what the Supreme Court has said about Congress's intent when it added the public disclosure bar in 1986, that the language needs to be read inclusively, and particularly the news media portion... Oh, fine. It said that in passing. It said the word broad. That doesn't tell you anything. The second is that I think you're absolutely right to sort of put yourself in the shoes of the government authority that could investigate a public disclosure, because that's where the... Particularly in the transaction side of the public disclosure bar, because this isn't a case about an allegation being publicly disclosed. It's a transaction. Were the facts publicly disclosed in a way that would provide reasonable notice to those government investigators? Is it anything on the Internet? How would you define it? I would certainly include the particular agencies that granted these contracts. I mean, the first place you would look if you were trying to figure out what had happened with these grants would be the agency grant lists and any Google search quite easily would have revealed that. So this is not an obscure result. Anything you can find with a Google search? What's the limits? I mean, if we were to write an opinion, since we don't have any law on this, what would we say was the limits of what is news media for purposes of using the Internet? Anything you can get on a Google search, if you do a good Google search, or what? I think I would apply the same standard that is applied to whether there's a reasonable inference that can be drawn. So would it be reasonable for a government enforcement authority to have been able to find the information? I think that would be a test that would be easily met here. But that kind of lifts off the page from the statute. Would it be reasonable, could they have found it out through reasonable inquiry? That gets to my, you could do it by a phone call, but phone call, it seems not to be in the statute. Correct. Phone call is not. News media is. And we're in a different world than 1986. There was no such thing. But there were phones in 1986. There were. There were phones, and there were print media. What is today's, I mean, the New York Times is as much an Internet website as it is a newspaper today. If I can focus it narrowly for my purposes, I'm going to assume for purposes of my question that the terms of the grant, that's federal report. The question then is, OK, that's what was in the grant. She represents in the grant application. And I assume that's in the grant that's publicly available information as part of the government report that she says she's going to be the principal investigator. The allegation is, however, that that's fraudulent because if she's a full time active professor, not on sabbatical, not on leave, she can't be. So the question is, how do we know in something that fits within the statute that she is a full time professor who's not entitled to be the principal investigator? So where are we finding that in a way that defeats the relator's claim? And I think that goes to also to the to the point of we need to be looking at all the different sources that were publicly disclosed here. And I'll briefly just interject. Quit clearing your throat and just tell me, OK, where do we find it? And where do you find it? It's in the I mean, it's in the websites of both the both of the universities. And it's in and it's in the FOIA response. Well, no. But somebody was trying to figure this out. I mean, somebody would have no reason to be figuring this out. And I presume that first of all, is the actual grant application on any public website? No, right? No, that was only. So the fact that she said that she was the principal and met the standards for being a principal, that itself is not on the website. That is not on a website that was in the FOIA response. OK, so that doesn't count, right? Well, no, that counts as a government report under a different authority. Yes, FOIA responses are public disclosures, but that's not news media. That's a different category. That's the first category of every court that has looked at it. And there's no contrary decision. So that's a public government report, which is so anything you can get from a FOIA request is a government report. We get anything from a government. I mean, I guess the thinking is that if it's in the government's possession, they don't need to be reminded of the fact that it's in the government's possession. Correct. And they've and they've actually taken the affirmative step of responding to a FOIA request. And so it's not just that it's FOIA bowl, not that it could be. I mean, anything could be right. Well, not anything. There are restrictions, but but many, many things could could be subject to FOIA. That's not enough. It has to be requested and produced. And that's what happened. And the Web site in this case is a government Web site. Yes. Well, there are several. But in the University of the University of California, Irvine is a government institution. That's correct. And the Web site in question is the school's Web site. Well, with with with the with the bio with the bio of the professor. Right. I mean, Columbia University's that's not a public institution, but that is a. Do you need for for your purposes? Do you need the Columbia Web site or is the Irvine one sufficient? They're duplicative of each other. The the only information that's in the Columbia Web site that is not in the Irvine Web site is what happened subsequent in time. Her Columbia position. There was also, I think, that same information in the SEC filing, which was also. Let me ask you this. It sounds as though we're beginning to say that Irvine is government for purposes of this. As I read the statute, we're talking about the federal government, not state government. Is that right? I don't see any difference for purposes of this statute between her Web site at Columbia and a Web site at UC Irvine, because all this stuff about government is federal government, not state. That would be the question. It would be reading the news media prong, not the report. That's my point. So let me come back to my question. OK, is a Web site maintained by the university or maintained by a university professor? Is that news media? Yes. And what case law do we have that says that? Wrong binder. It's information, but news media. That's a rather expansive definition of news media, but it's consistent with every court that's looked at it. And I think actually a very illustrative case is the one that that the appellant cites for the contrary, which was a commercial Web site, sort of private posting on the Web site that hadn't been vetted by the Web site itself. I think it was a contribution to a CNN Web site. And is it undisputed for purposes of what we have in front of us that her status as full time active professor or on sabbatical and so on was on the Web site? The Web site, the Web site stated that she was a chancellor professor and and that was repeated, that she was she had been an associate professor, a full professor and then a chancellor professor. The words full time or part time or sabbatical don't appear in any of the public disclosures. But our view is that a government investigator with the standard of what could I reasonably infer from what's publicly available would be. There's a requirement that you can't work more than 50 percent anywhere else. It's disclosed. That's disclosed. It's disclosed that you represented you're the principal investigator and that you're a professor. The actual applications are not in the record, right? I mean, I would have thought that I would have thought that when she filled out the application, she must have said she was a professor. Why else would they be giving all this money? That we just never got that far in the case, to be honest with you. That's not that that is not a document that's subject to public disclosure. So that was not part of our motion. But that record will be developed if if the court does not affirm, we believe the court should. But, yeah, there are many other documents out there. But those just aren't in the record for because they weren't subject to the motion. Does it make suppose we thought I mean, my current sense is that whatever whether this is media or not media and whether this was publicly disclosed or not, what's in the complaint doesn't add anything to what was out there. I guess it only still matters whether it was a public disclosure. And I, you know, I'll add that the standard for, you know, there are three tiers of of review here. And, you know, the first is whether or not the documents themselves were properly subject to judicial notice. That's an abuse of discretion standard that let me ask, you know, the question about the public. Suppose we were this was 1985. All right. And there was no Internet. So the university but the university had a catalog as many universities did. And in their catalog, it said that said exactly the same thing about Dr. Fang that the website says now. Would that be a news media? I think there would have been an open question if it had been requested under the California equivalent of FOIA, the Public Records Act. And it had been produced. That's not for you. I mean, I want to go to the university. I asked for a catalog and I get it. And it says Dr. Fang is whoever she is. That would not have fit in under the statute. Well, but it's the same. That's the problem. Well, the world is different now. The world has Internet. The world has people who. It's publicly available. But I wouldn't call it news media either. But anybody who wants it can get it. It's just easier. In my hypothetical, anybody who wants it can get it. I call the university. You know, when I was going to college, I did get a call. I write a letter to college and they say, I'd like to see your catalog. And they send it to me. They don't ask who I am or anything. Courts have had to grapple with the fact that the statute was written when news media could not have included the Internet because it didn't exist. But let me make sure I understood your answer to Judge Berzon's question. The catalog in the days when they sent out catalogs, you say that's not news media under the statute. Well, I understood your question to be if you actually went to UC Irvine and asked for a copy of the catalog. Well, that's not a question of how you got it. The question is, is the catalog news media? And I understood your answer to be no. You don't have to stick with that answer if that's not your answer. Well, I think it would. Okay. I understood the question as being a little more limited. Okay. Well, that's my question, then. Is the catalog news media? I think it would depend on how it had been distributed. I think if it had been, I'm trying to think of how people did things before the Internet. You wrote a letter and you said, dear Columbia, I would like a copy of your catalog. They didn't ask who you were or anything. They said, fine. And they sent you a copy of your catalog. Yeah. I think that that was not part of the statute. I think that if it were posted up on a public bulletin board, it might have qualified, given the broad. But you're saying that the modern equivalent of the catalog is news media. That's an interesting statement. I think the catalog, I think it's the equivalent of putting it up on a public bulletin board where people know they can go and look. And I think that would be a public disclosure. It's a public disclosure, but this statute doesn't cover all public disclosures. It covers certain public disclosures. That's correct. It has to be one of the three categories. So public disclosure is not synonymous or identical with or identical to news media. That's the issue. But if I put up, hired the Goodyear blimp to fly around with information on it, if we were to read news media to mean literally New York Times or L.A. Times, then anyone seeing that Goodyear blimp with information could file a claim, I take it. If we were to read news media to mean what we think of ABC, NBC, CNN. Even Fox. I'm thinking back to 1986. Even Breitbart and even Bloomberg and everybody else. I think that would have been an interesting question. I think if Goodyear provided a service where people could broadcast. I hire an airplane and I say, go fly over the Rose Bowl and we're going to reveal this thing about UCLA Medical and everyone in the Rose Bowl then could say, I see the plane, pass the information and file a claim. I don't see how you read this Schindler case in a broad sweep and say that that's not news media under the provision. So I would say that that would have been a public disclosure. And it would bar somebody who didn't have something significant and valuable to add, which here we think. Anyway, the one thing I would say is that the briefing on this issue, which is the interesting legal issue in this case, has been woefully inadequate. And I don't have much sense of what the answer is from anything I've read in briefs. My recollection, and I've been trying to sort of offhand find it and I've failed, is that the vast majority of courts that have looked at this have found that. Page 11 of your answer in brief. Thank you. You got it. Not with a whole lot of reasoning. I mean, they just say it basically. And they don't say, but the more interesting question is what's the limit of it? Where does it stop? I think that the limit should be a common sense application of where, you know, back to my statement I made earlier, which is what would the government, if given an opportunity to look at this information, could reasonably infer and would have been reasonable for the government to have found the information in the first place. Certainly information posted on the government's own websites. I think that's an easy case where, you know, applying that standard. Another government website has the indicia of reliability. You're the government. You've received an application from someone, and due diligence, put the person's name into any search engine you want. It doesn't have to be Google. It would pull up the UC Irvine website, and a government investigator could have easily found all the material facts that are alleged in the second amended complaint. It seems to me you're arguing that news media means publicly broadcast. I would agree with that. I would agree with that if there are not restrictions, and I think that's the day and age we live in now. That's not 1985, but that is 2018. The reason I'm concerned about it is because, I mean, in fact, there is a, given the amount and the depth of information that's available, there is a profession of knowing how to use it, and just people in general don't necessarily know how to find everything. So there has to be a cutoff somewhere, and that's what I'm, I don't know what it is. And I think the case cited by the appellant gives a good example of where you might say that that's not reasonable, to say like a forum where you don't have the indicia of reliability, like where anybody can post and you don't know where it came from, as opposed to, and I think the far end of the spectrum here are the actual federal agency websites that disclose it, and I think a university website where they, there's no potential reason to think why they would post something. See, part of the problem here is that we have this X plus Y standard, right? So that the information doesn't have to be together in one place. If we're all in one place, it would be one thing, but in order to figure this out, you not only, you have to look for something that you're not looking for first, i.e., you have to decide for some reason to go look at these particular grants, and then you have to choose one of them for some reason and go match them up, go match up the principal investigators, run a Google search on them, and find out, find some other document that says who these people are, and then you have to make the requisite inferences. Now, I understand that our case law seems to say that, but it doesn't say it in the context of two entirely separate Internet searches, which is what is required here, right? I would say that if we're going to apply a reasonable standard, a sort of reasonable diligence, reasonable inference standard here, there weren't that many dots to connect here, and it wasn't that obscure what anybody could have done. But you'd have to go, you have this huge list of grants, as I understand it, and for some reason you have to pick this Maria Fang out and say, I'm going to go look for her out of, I don't know, thousands, I suppose, maybe tens of thousands, I don't know how many are on this list, and then you go and you start looking, just checking everybody on this list to see what they do in the rest of their life, isn't it? If we were in 1985 or we are today, 1985, the government prints a report that lists out all their, and they did, all their grants for the year. Now you can get it much more easily. You can get it online, okay? All you would have to do is say, okay, Newport Sensors has applied for even just one of the grants, and just starting there, all you have to do is say, okay, we see in that information, we can see that Maria Fang, Professor Maria Fang was designated as the principal investigator. And thanks to the Internet, and this is how things have changed, now you can quite easily see on reliable websites. So the job of doing the work of matching those things up is just not part of the Key Champs statute anymore. And maybe that's right, but it's unusual. It's designed to protect the community. Because there is a time commitment and there is a skill. It's not just walking around the streets to find the sample. I think it's the balance that Congress decided on between. Well, that's not true. That's the problem here. They had no idea what they were doing at that. Now in the revisions, you'd think somebody might have thought about it, but there's no indication they did. And I was speaking more broadly, that there's a balance between allowing whistleblowers to come forward and reveal fraud based on significant information that they have and that is not publicly available versus parasitic lawsuits where it is reasonably available. Here it was reasonably available on public websites. That's a very nice statute. That's not the statute that we have in front of us. I believe that's what the public disclosure bar says. That may be what it's intended to say, but it doesn't say reasonably available information. You're right. I'm asking you to make the same interpretation that the vast majority of cases looking at websites have when they've looked at this news media question. Yeah. Oh, you got it. Okay. Oh, I'm way over. You're way over, but we won't charge you. Okay. Thank you very much, Your Honor. Mr. Ong, we took you up to your time limit, but we'd like to give you a chance to respond. If you could get three minutes on the clock, please. In my opening brief, page 25, the lower half, I stated that the district court abused its direction by admitting the exhibit as information from news media. The UCI Internet, with the disclaimer, cannot be considered as news media. Then I give a federal court case here, United States of America Extra, Moore v. Majestic Blue. So the UCI website has a disclaimer. This United States Extra, Moore, provides that the CNN News, there was a disclaimer. Therefore, CNN News, with the disclaimer, couldn't be considered as news media. Therefore, the lower court decision is inconsistent with what it is. Two questions for you. Did you argue before the district court or to this court that the SBIR and NIST websites were not news media? Did you ever argue that? No. Okay. Because it's a government. You agree it's a government report? Yes. Okay. It's a government report, but the news media, not everything shown on news media is a subject of the public disclosure bar. Right. What about my question to your opposing counsel, where during the Rose Bowl, right down the street here, I hire an airplane to fly around with a banner that has the information that shows that someone is engaged in fraudulent behavior. If my brother is in the stands watching the Rose Bowl and he sees that airplane, could he then use that information and file a claim? I think your honors and Mr. Silverman discussed such a high-level legal question. Right. But I cannot participate in very intelligent way. But in my opinion, yes, there's a news media. You're saying the airplane is the news media or not the news media? No, no. The news report based upon the information collected by the – I pay for it. I'm not news media. And I put the information about Dr. Fang and they fly around the stadium and everyone sees the airplane in the stands, not reported to the news media. Could they pick up their phone and call their lawyer and say, hey, file a claim for me right now, because I saw the airplane that says Mrs. Fang is a crook. Could everyone in that stadium do it because that airplane is not news media? Until it's proven to be true, if it's fake news or joke or rumor, I don't think that can be used as publicly disclosed information in public disclosure. Thank you. One point I want to make regarding news media is news media in public disclosure bar statute is very narrow. Based upon public disclosure of allegations or transactions from the news media, if news media say, Zhuang Hong is a crook, that allegation can be used as a public disclosure. But if news media say Zhuang Hong is a beautiful person, that has nothing to do with the false claim, therefore that's not considered as news media. But one last important point is this. Whatever the language or analysis argument was done in my opening brief or opposition brief, one important point is defendants admit that the fraudulent transaction was made by them, but these fraudulent transactions was revealed in news media or public information, therefore I have to go, let me be free. So I never heard that kind of law in my lifetime. Well, it doesn't mean that they go free. It means that you as an outside relator don't get money. The government is perfectly free to prosecute. Yes. On its own. Yes. But without your participation. Yes, I understand. So I don't get bounty, but person who committed that fraudulent transaction have to pay $7 million multiplied by three times. So $21 million should be paid to the government so that it can be distributed to the taxpayer. But it has nothing to do with the public disclosure issue. But the website information with a disclaimer, that is nothing but the rumor. Okay, got it. So all other two information, those are all information professors use, therefore any professor who has SBIR and the venture capital should be sued for false claim. Okay. But that is nonsense. Like inside the information with the fraudulent claim made knowingly with the center should be a part of the disclosure. But with the website information, we cannot get any indication of the knowingly. Okay. Thank you. Thank you very much. Thank you. The case of United States X-Rail Huang Hong versus Newport Centers is now submitted for decision.
judges: W. Fletcher, Berzon, Owens